*80 OPINION of the Court, by
Judge Bibb.
M’Clure Was complainant in chancery, praying a conveyance of the elder legal title, acquired upon an adverse claim. The circuit court, upon hearing the cause, dismissed the bill, to which the complainant prosecuted a writ of error.
M’Clure’s claim is a settlement and pre-emption, granted by the commissioners, on the 24th of February, 1780, for residing in the country twelve months, before the year 1778, lying --on both sides of Bullskin creek, a branch of Brashears’s creek, about trvo miles above the fork, to include his improvement, —The entry of the settlement with the surveyor is in the same words, made on the 3d of March, 1780. The preemption was entered on the 30th of October, in the same year, for 1000 acres, “ ~-.adjoining his settlement on the upper and lower side, and to run up and down both sides of Bullskin for quantity.-”
The claim, being a village right, depended for locality upon the certificate, and the description the claimant might choose to give; the improvement called for was not the consideration for which the claim was granted, but an object of location which the owner was not bound to use. The certificate is the origin of the claim ; and the leading feature in the description, is the improvement: the grant of the commissioners, after stating the claim made in the words before set forth, is, “ to include the said improvement.” Until the improvement, therefore, is fixed, we cannot give any special or precise locality to the claim : for we cannot know what part of Bullskin is to be embraced, nor how far on each side the claim is to project; we cannot know whether a line *81 bñ Bullskin will measure the length or the breadth the survey, until the relative situation of the improvement is ascertained. The claimant cannot abandon the call for the improvement, and rely upon the distance from the: fork, according to the principles settled in the cases of Craig and Johnson vs. Doran and Ashley, Cox Vs. Smith, Craig vs. Machir, Wilson vs. M'Ghee, and other cases of the like kind, decided by this court.. This being premised, we will proceed to speak of the means afforded by the locator for finding M’Clure’s improvement. As the improvement claimed, has no pretension to any notoriety or general reputation, much less to celebrity as M’Clure's, the clew to find and identify it, must be sought for in the body of the location. Before we speak of the evidence respecting the existence and identity of the improvement, it is proper to declare, that we consider the evidence of the oral description given by M’Clure of his improvement, and all the evidence dependant On it, and the gallows trees, as unconnected and irrelevant to the case** It has been often decided, that the intention of the party is to be found out from the entry, notby proving his intentions verbally communicated, even to his particular adversary ; and that the parol declarations of the locator, as to the place where he intended his claim to lie, cannot be brought in aid of the location. The reasons are strong, that the rule should be reciprocal, and the same mischiefs would ensue in the one case as in the other. The same record of the location which is to confine and circumscribe the locator, and shield his adversary from surprise and false testimony of fleeting unembodied words or intention, ought equally to protect the locator from the same mischiefs.
claimant cannot abandon the impr°ve- ^ the Pittance from the fork,
pnncr-Do. ran and. jjhhy, di — Craig vs. Machir, anteso m' a„¿ Kenton vs. Lee, gland vs. Sbep-herd, yoft ⅞'“ iruuJms vs. Taylor, ante 41 f,M'Grhee Js* dealt vs. Gal. ¡cwaygojl
f3™1 focatoo even to his adversary. **t 3he cat¡on> cannot be brought to "^ortodefcoy
pie, Conjiiia vs. Huglu \thirsvs.jobn. fin's heirs, a. F*1. 1809 — . Lr0'g *⅜ ‘ * *86* Pr' °eC 2
*81 In searching for the improvement, we admit Bullskin and Brashears’s creek, as streams of undoubted notoriety and good general description. And we think “ the fork” alluded to in the entry, is that formed by the confluence of Bullskin and Brashears’s creek, and not the forks of Bullskin. The entry having described Bullskin as a branch of Brashears’s creek, has necessarily described (to the understanding of every man acquainted or unacquainted with those waters) a fork, and when the definite article is used in allusion to “ the fork," it would be leaving that which is contained in the *82 entry, and travelling to tbat not contained in it, should *he f°rks of Bullskin be fixed on.
improvement in ’76 no proof of exigence
valid becaufe im. provement had ms no°t°fuffi-cientiydefcrib-ed, and its ex-date of the to-cation not pro-vsda
With this understanding of the direction given, to searc^! iwo m'des above “the fork,” we can make no determination favorable to the location. What kind of improvement was to be sought for, whether a cabin, a deadening, marked trees, or a brush heap, the locator has not sa^‘ hie has not t0^ on which side of the creek the improvement was, nor how far from it; although, to be sure, one would expect from the entry to on or near to the creek. The place at or near which the cabin claimed by M’CIure, is represented as having been made, is about thirty poles from the creek ; al)d ^ it had been found by one who was searching for it, the distance from “ the fork” is such that he could not have had any reasonable assurance therefrom that it was the cabin intended. But there is no satisfactory proof in the cause, that the improvement claimed had any existence or visibility in the year 1780. It is claimed as made in the year 1776 ; it does not appear that it was ever seen by more than six persons, including the claimant, being the company of improvers who made this and seventeen other improvements on the waters of Brashears’s creek, four of which were onabranch emp-tyinginto Bullskin, about 200 poles from the improvement claimed. For these improvements the company cast lots, and after some trading, it is said by Pottinger and Steel, the improvement now claimed, and two others, fell to M’Clure. The identity of this improve-, ment comes before the court in such a questionable shape, that it is unreasonable to presume subsequent locators either knew it or were bound to notice and avoid it, as appropriated by M’CIure. The place where it stood in 1776, is not definitely fixed by the two witnesses who are brought to prove it. The testimony raises a violent presumption that there were no traces of this improvement to be found in 1784, and there is no evidence that the improvement (ifit ever existed where it is claimed) was seen at any time since January 1777. This raises a violent presumption (independent of other circumstances in the case) either that Pottinger and Steel, who attempt to fix the site somewhere in Win-lock’s field, have been deceived and incorrect in their recollections, after sixteen years absence, or that the ina- *83 provement was originally very obscure and difficult of approach. It was said in argument, that it would be hard if early adventurers should lose their claims by the destruction of their improvements by time, accident or design. But this claim, as was before observed, was granted, not in consideration of the improvement, but was itinerant, and to be located at the discretion of the claimant; he was not tied down, when he laid his claim before the commissioners, to this or that of the several improvements he had made, nor to any improvement. It depended on his own location, and it was his own negligence, folly or misfortune, to have located his claim by reference to an improvement not then in existence, or so obscure that no one could find it. If the improvements made by adventurers were of a kind neither calculated to resist the hand of time nor of men, but easy to be obliterated by either, the fault is in themselves, not to have bestowed more labor, or in depending on a description so uncertain and transitory; or in suffering their claims to sleep until it is too late to awaken them.
That the system adopted by the legislature of Virginia, for disposing of their vacant lands, was not the best for the individual claimants, which might be adopted, experience has amply testified. That many mischiefs have resulted from the system, which are beyond remedy, cannot be denied. But whatever may be our sense of the gratitude due from the community at large, to those who formed and defended the infant settlements of our country, we cannot, as judges, therefore change the law, nor make that evidence which is not. If the claimant had dearly established where his improvement was in 1776, and had given any rational presumptive evidence that the same improvement had been seen by any one after the date of his location, then the question would have been, whether his description was sufficient to enable the holder of a warrant to find, know and avoid his improvement called for. But as the evidence is now presented to us, we are bound to decide, that the improvement called for had no notoriety ; that the description in the certificate and entries with the surveyor is not sufficient to identify the improvement claimed ; and moreover, that the existence and locality of the improvement, at the place claimed, are not sufficiently made out.-Decree affirmed,